**Affirmed and Memorandum Opinion filed June 26, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00079-CV

## IN THE INTEREST OF K.K.N. A/K/A K.K.N., A CHILD

**On Appeal from the 312th District Court
Harris County, Texas
Trial Court Cause No. 2012-18347**

## M E M O R A N D U M    O P I N I O N

Appellant C.N. (Father) appeals the trial court's final decree terminating his parental rights and appointing the Department of Family and Protective Services as sole managing conservator of his child K.K.N. (Karen).[1] The trial court terminated Father's rights on the predicate grounds of abandonment, constructive abandonment, and failure to comply with a family service plan. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(B), (N), & (O) (West Supp. 2017). The trial court further found that

---

[1] We use pseudonyms to refer to the child. *See* Tex. R. App. P. 9.8.

termination of Father's rights was in the child's best interest, and named the Department managing conservator of the child. The trial court terminated Mother's rights to four children including Karen. Mother executed an irrevocable affidavit of relinquishment of her parental rights, and has not appealed the termination of her parental rights.

In three issues Father challenges the legal and factual sufficiency of the evidence to support the trial court's findings on the predicate grounds of abandonment and constructive abandonment, and that termination is in the best interest of the child. Father concedes the evidence is sufficient to support the trial court's finding that he failed to comply with the family service plan. Because we conclude the evidence is legally and factually sufficient to support the trial court's findings, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Pretrial Proceedings

#### 1. Child Support Review Order

This case began in 2012 with a Child Support Review Order establishing the parent-child relationship between Father and child. The order established that Father is the biological father of Karen. Mother and Father were appointed joint managing conservators of the child. Mother was designated the conservator who could determine the child's primary residence. The order also contained a possession and access order regarding when each parent would have possession of the child. Father was ordered to pay monthly child support in addition to monthly medical support.

#### 2. Pretrial Removal Affidavit

Four years later the Department filed a motion to modify for conservatorship and for termination of both parents' parental rights. The removal affidavit notes that

the Department received a referral reporting neglectful supervision by Mother. At the time, Mother had three children; Karen was the middle child. The original neglectful supervision case was closed because Mother was making no progress and had agreed to placement of the children with her cousin. During Mother's fourth pregnancy she tested positive for marijuana on four separate occasions. When the fourth child was born Mother placed her with another family member.

The Department sought to be named temporary managing conservator of all four children because there were no appropriate caregivers to provide for their needs. Mother was given sufficient time to complete her services, but failed to do so and continued to test positive for drugs.

### 3.    The Investigation

The Department investigator received the case on August 29, 2016, and noted the following findings:

On February 15, 2013, three years before the current removal, the Department received a referral alleging medical neglect of Karen, then two years old, by Mother. The referral noted that Karen had a black eye and that is was alleged that Mother hit her. Karen was wheezing due to untreated asthma and appeared to be malnourished. Father was identified as a potential stable environment for Karen, but was ruled out because he may have schizophrenia and bipolar disorder. In addition Father stated his concerns about Karen's medical needs, but admitted he did not seek medical attention because "he is a slow learner and does not understand." Father admitted being arrested because he was smoking marijuana. Father also admitted smoking Kush (synthetic marijuana). Mother expressed concerns about Father's mental health, but allowed the children to stay with him unsupervised.

Mother has an extensive history with the Department including as a child. Her

last Department case was due to one of her children's death as a result of Sudden Infant Death Syndrome. Mother's youngest child was born in April 2015. During the time from December 2015 through August 2016, the Department attempted to engage both parents in services. The parents started the parenting class, but did not complete it. The Department had difficulty contacting both parents because they moved frequently and the Department did not have valid contact information.

The Department was able to contact the parents and engage in a family team meeting in March 2016. The parents were informed again of what services they needed to complete to obtain the return of their children. In April 2016 both parents missed appointments with the Wellness Group for substance abuse counseling. In May 2016 both parents failed to appear for ordered drug testing. In June 2016 neither parent could be located; there was also no contact noted for the month of July.

On August 22, 2016, Mother called a Department supervisor and informed the supervisor that the three older children were living with her, "and she wanted the agency to know before she got into trouble." The next day drug tests on Mother were administered. Mother tested positive for marijuana in both her hair and urine.

### 4. Family Service Plan

The Department prepared family service plans for both parents. The trial court's status hearing order adopted the service plan as an order of the court. Father's plan required him to:

- Attend all court hearings, permanency conferences, and visits;
- Complete a parenting class;
- Demonstrate stability in housing and income;
- Participate in random drug testing;
- Participate in a substance abuse assessment;
- Participate in psychological and psychiatric assessments; and

4

- Sign a release of information so that the Department could have access to his records at agencies from which he received services.

Father admits that the only service he completed was a Children's Crisis Care Center (4 C's) assessment.

## B.    Trial Testimony

Trial began with Mother's testimony about her execution of affidavits of relinquishment to all four of her children.

The caseworker then testified that the two oldest girls, including Karen, were placed in a foster home. The foster home is meeting the children's needs and the Department believes it can place the children in a permanent home. Both of the older girls' demeanors have dramatically improved since being placed with the foster parents.

Mother's four children have three different fathers. The trial court accepted Mother's affidavit of relinquishment as voluntary and set a trial date for the three fathers, one of whom is Karen's father, the appellant in this appeal.

When trial resumed, Father's attorney was present, but Father did not appear. Father's attorney noted that Father was aware of the trial setting, but told his attorney he had to pick up his son from school and would not be able to attend the trial. Father's attorney moved for a continuance, which was denied by the trial court.

The caseworker testified to the Department's initial involvement with the children. The three oldest children, including Karen, had been removed from Mother after a report of neglect, and were staying with a relative caregiver. The caregiver later gave the three children back to Mother. Mother called the Department to inform them that she had the children. The Department required Mother to submit to a drug test in order to keep her children. Mother submitted to the drug test, tested positive,

and the Department removed the children. Mother attempted to work services from her family service plan, but was unable to maintain sobriety. Mother eventually executed a voluntary affidavit of relinquishment of all four children.[2]

The caseworker's interaction with Father was limited. Father appeared at an earlier hearing, but before that hearing the caseworker had no contact with Father. The trial court later ordered no contact between the caseworker and Father due to Father's "behavior, his aggressiveness towards [the caseworker], aggressiveness towards [the caseworker's] supervisor." Despite the trial court's order, according to the caseworker's testimony, Father continued to violate the order of no contact.

Father's service plan was mailed to him and Father completed the 4 C's assessment. The Department required Father to submit to a drug test before he could visit Karen. The caseworker arranged several opportunities for drug tests, but Father refused. The caseworker testified, "[T]hat's when the aggressive behavior started, when I started asking him to go take a drug test."

The caseworker expressed concern that Father was appearing at the Department's office looking for the caseworker even though he had been instructed to have no contact with her. The Department also received two referrals on another child who was living with Father during the pendency of this case. When the Department investigator drove to Father's home to investigate the referrals, Father was "nowhere to be found." The Department also introduced a certified copy of Father's 2012 criminal conviction for tampering with physical evidence.

At the time of trial Karen had been in the care of the Department for more than a year. During that time Father provided no support for his child. The Department has an address for Father, but has been unable to locate him at that

---

[2] The youngest child was born after the three oldest children were initially removed.

address. Karen was taken into Department care in August 2016; the trial took place on December 7, 2017. Father had not seen Karen during that time.

The foster parents with whom Karen is living are willing to adopt her. Karen seems happy and healthy with the foster family, and they are meeting all of her needs. The foster parents are also willing to adopt Karen's older sister who has also been living with them. Before coming into care, Karen had medical issues, specifically, she suffered seizures. Since coming into care and living in the foster home Karen has not experienced seizures.[3] On cross-examination the caseworker admitted that there were indications in the 4 C's assessment that Father may have mental health issues.

The Child Advocate also testified that Child Advocates had difficulty contacting Father. The Advocate testified that she personally reached out to Father by telephone. Father answered her call, but hung up when he learned it was the Advocate contacting him. The Advocate testified that it would not be in Karen's best interest to be involved with Father due to his absence throughout the duration of the case.

At the conclusion of trial, the trial court orally announced that it was terminating Father's rights under the predicate grounds listed in Family Code section 161.001(b)(1)(C) and (O). The court also found that termination of Father's rights was in the best interest of the child. In the court's written judgment, Father's rights were terminated under section 161.001(b)(1)(B), (N), and (O). We note that subsections B, C, and N each address abandonment. A written judgment or order controls over a trial court's oral pronouncement. *In re K.M.B.*, 148 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In addressing Father's issues we

---

[3] There was no testimony about the cause of Karen's seizures or why they stopped when she was placed with the foster family.

will refer to the trial court's written judgment.

## II.   ANALYSIS

In three issues Father challenges the legal and factual sufficiency of the evidence to support the trial court's findings on the predicate grounds and the best-interest finding.

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or

conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344–45 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *Id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

## A.    Predicate Termination Grounds

Subsection O of Family Code section 161.001(b)(1) requires clear and convincing evidence that the parent:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Tex. Fam. Code Ann. § 161.001(b)(1)(O); *In re S.M.R.*, 434 S.W.3d 576, 582 (Tex. 2014).

Father concedes the evidence is legally and factually sufficient to support the trial court's finding that termination was proper under subsection O. An unchallenged fact finding is binding on us "unless the contrary is established as a

matter of law, or if there is no evidence to support the finding." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *see In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (unchallenged findings of fact supported termination under section 161.001(1)(O) because record supported those findings).

The record supports the unchallenged finding. First, the trial court approved and incorporated the requirements of Father's family service plans as a court order. *See In re K.F.*, 402 S.W.3d 497, 504–05 (Tex. App.–Houston [14th Dist.] 2013, pet. denied). Second, Karen had been in the Department's managing conservatorship for more than one year at the time of trial. Third, there is undisputed evidence that the children were removed due to Mother's illegal drug use.

The evidence is undisputed as well that Father did not complete the requirements of his service plan. We conclude the evidence is legally and factually sufficient to support the trial court's determination that termination of Father's parental rights was justified under section 161.001(b)(1)(O) of the Family Code. *See In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

"Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Though normally we would not need to review the sufficiency of the evidence to support the subsection B and subsection N findings, Father urges us to review the sufficiency of the evidence supporting the findings under subsections B and N because those findings can be used to support the best-interest finding. *See In re C.H.*, 89 S.W.3d at 28.

While it is true that proof of acts or omissions under section 161.001(b)(1) may be probative in our review of the trial court's best-interest finding, proof of the elements for the findings under subsections B and N are not necessary in this case

10

to support a finding that parental termination is in the child's best interest. *See id.*

Because there is legally and factually sufficient evidence to support the trial court's finding under subsection O, we need not address Father's arguments that the evidence is insufficient to support the trial court's findings under section 161.001(b)(1)(B) and (N). *See In re A.V.*, 113 S.W.3d at 362. We overrule Father's first two issues.

## B.    Best Interest of the Child

In his third issue, Father challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of the child.

The factors the trier of fact may use to determine the best interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see also* Tex. Fam. Code Ann. § 263.307(b) (West Supp. 2017) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment).

Courts apply a strong presumption that the best interest of the children is served by keeping the children with their natural parents, and the burden is on the

Department to rebut that presumption. *In re U.P.*, 105 S.W.3d at 230. Prompt and permanent placement in a safe environment also is presumed to be in the children's best interest. Tex. Fam. Code Ann. § 263.307(a).

In his reply brief Father notes that much of the evidence the Department relied on at trial and on appeal refers to Mother's drug use and Karen's siblings' father's failings. In reviewing the legal and factual sufficiency of the evidence to support the trial court's finding on best interest we are required to review all of the evidence presented at trial. *See In re J.O.A.*, 283 S.W.3d at 344–45. We are mindful of the fact, however, that the focus in a best-interest analysis is not only on the parent's acts or omissions, but on the nature of the relationship the child has with the parent. *In re E.N.C.*, 384 S.W.3d 796, 808 (Tex. 2012). Therefore, in analyzing whether termination of Father's parental rights was in Karen's best interest, we focus on the evidence regarding the nature of the relationship between Karen and Father.

1.    *Desires of the child*

At the time of trial Karen was six years old. Father argues that there is no evidence in the record regarding Karen's desires. While Father is correct, a lack of evidence regarding a best-interest factor does not constitute evidence contrary to that factor. *See id.*

When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well cared for by the foster family, and have spent minimal time with a parent. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Karen and her older sister are living with a foster family. The foster parents are willing to adopt both children. Before coming into care Karen suffered seizures, which she has not experienced since she has been living with the foster family.

2.     *Present and future physical and emotional needs of the child*

Father argues that other than brief testimony about Karen's seizures there is no evidence in the record regarding specific emotional or physical needs of the child. The caseworker testified that Karen experienced seizures prior to coming into care, but no longer suffers seizures. Father is correct that the record does not contain evidence explaining the cause of Karen's seizures or the cause of their disappearance.

While some children may have extraordinary physical and emotional needs requiring extra care, all children have physical and emotional needs that must be met on a daily basis. Father, was absent during trial, and provided no support during the pendency of this termination proceeding. Father has not provided for Karen's past or present physical and emotional needs. A fact finder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness to meet the child's needs in the future. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

3.     *Present and future physical and emotional danger to the child*

Father argues that the record contains no evidence that Father was a danger to Karen because appellant did not play a role in the series of events giving rise to the Department taking custody of the child. Appellant admits an "extensive criminal history," but only one conviction for a non-violent offense.

In making its best-interest finding, the trial court reasonably could have credited the evidence of Father's inability to safeguard her physical and emotional well-being. A lack of all contact with a child without any proffered excuse and no effort to ensure her safety—coupled with criminal history and incarceration—is sufficient to support a best-interest finding. *See In re V.V.*, 349 S.W.3d 548, 553–54 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

4. *Parental abilities of those seeking custody, stability of the home or proposed placement, and plans for the child by the individuals or agency seeking custody*

These factors compare the Department's plans and proposed placement of the child with the plans and home of the parent seeking to avoid termination of the parent-child relationship. *See In re D.R.A.*, 374 S.W.3d at 535.

Because Father refused to submit to drug testing he was unable to visit his child throughout this case. Father provided an address to the Department, but could not be found at the residence despite several attempts by the Department to contact him there. Father argues that the Department did not meet its burden to show that he could not provide a safe and stable home. However, by not meeting with the Department and refusing to speak with its representatives, Father frustrated the Department's attempts to determine if he could provide a safe and stable home or maintain stable employment. The Department provided Father with a service plan explaining the importance of accomplishing the tasks to obtain the return of his child. Despite this effort, Father admits he did not comply with the plan.

In contrast, the foster family is meeting Karen's emotional and physical needs, and is willing to adopt Karen and her sister.

5. *Programs available to assist in promoting the child's best interest*

In determining the best interest of the child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the child. *See In re E.C.R.*, 402 S.W.3d at 249. The record reflects that Father did not comply with the family service plan in that he failed to demonstrate that he maintained stable housing, and failed to obtain or maintain legal employment. Father failed to demonstrate the ability to provide the child with safety or stability, as is presumed by the Family

Code to be in the child's best interest. *See* Tex. Fam. Code Ann. § 263.307(a) (West 2015).

6. *Acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate, and any excuse for the parent's acts or omissions*

In his brief Father notes that he was not allowed to visit Karen, and that the caseworker had no contact with him. The record reflects, however, that the Department would allow visitation if Father would submit to a drug test, but Father refused. The trial court could infer from Father's refusal that he was using drugs. *See In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (trial court could infer parent's failure to submit to court-ordered drug screenings indicated she was avoiding testing because she was using drugs). With regard to the caseworker's communication with Father, the caseworker testified that attempts had been made to contact Father at the address he gave, but he was "nowhere to be found."

Father's pattern of conduct reflects that termination is in the best interest of the child. Father refused to submit to drug testing to be allowed visitation; Father did not communicate with the Department or give an address where he could be located. Not only did Father not offer an excuse for his behavior, he did not appear at trial.

We conclude that legally and factually sufficient evidence supports the trial court's finding that termination was in the best interest of the child.

### III. CONCLUSION

The evidence is legally and factually sufficient to support the predicate termination finding under subsection O. And, based on the evidence presented, the trial court reasonably could have formed a firm belief or conviction that terminating

Father's parental rights was in the child's best interest so that she could promptly achieve permanency through adoption. *See In re T.G.R.-M.*, 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

We affirm the decree terminating Father's parental rights.


/s/     William J. Boyce
        Justice


Panel consists of Justices Boyce, Christopher, and Busby.